UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JACOBO ALBERTO MENDEZ RICANO,

Petitioner,

v.

CHRISTOPHER J. LAROSE, Senior Warden, Otay Mesa Detention Center; PATRICK DIVVER, Field Office Director, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement; SIRCE OWEN, Acting Director, Executive Office for Immigration Review; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; TODD BLANCE, Acting Attorney General of the United States,

Respondents.

Case No.: 3:26-cv-4975-JES-DEB

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

**[ECF No. 1]**

Before the Court is Petitioner Jacobo Alberto Mendez Ricano's ("Petitioner") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1 ("Pet.").

Pursuant to the Court's Order to Show Cause (ECF No. 2), Respondents filed a Return to the Petition. ECF No. 4 ("Return"). Petitioner filed a Traverse and Supplemental Evidence. ECF Nos. 5 ("Trav."), 6. After due consideration and for the reasons set forth below, the Court **GRANTS** the Petition.

## I. BACKGROUND

Petitioner, a federal immigration detainee, is a native of Mexico who entered the United States on March 29, 2009, and given Voluntary Return. Return at 2; ECF No. 4-1 ¶ 6. Petitioner returned to the United States and entered without inspection on April 12, 2009. Pet. ¶ 8. On February 24, 2015, Petitioner was arrested by local law enforcement for a driving-under-the-influence offense and subsequently released. *Id.* ¶ 9. Shortly thereafter, on February 27, 2015, Petitioner was detained by Immigration and Customs Enforcement ("ICE") and issued a Notice to Appear ("NTA"), Form I-200 (Warrant for Arrest of Alien), and I-286 (Notice of Custody Determination). *Id.* ¶¶ 9–10. That same day, Petitioner was released on conditional parole under 8 U.S.C. § 1226(a). *Id.* On August 3, 2017, Petitioner filed his application for cancellation of removal, which was denied on April 3, 2019, by an immigration judge ("IJ") based on Petitioner's failure to establish "ten years continuous physical presence prior to his merits hearing." ECF No. 5-3 at 6; Pet. ¶ 13. The IJ also granted Voluntary Departure. ECF No. 5-3 at 8; ECF No. 4-1 ¶ 10. On December 7, 2020, Petitioner timely appealed the IJ's decisions and filed a motion to remand to the Board of Immigration Appeals ("BIA"). Pet. ¶ 13; ECF No. 4-1 ¶ 11; ECF No. 5-2 at 7. On December 14, 2021, the BIA dismissed Petitioner's appeal and denied his motion to remand. Pet. ¶ 13; ECF No. 4-1 ¶ 12; ECF No. 5-2 at 3. Petitioner timely filed a petition for review before the United States Court of Appeals for the Ninth Circuit. Pet. ¶ 13; ECF No. 4-1 ¶ 13. Based on Respondents' unopposed motion to remand Petitioner's case, the Ninth Circuit remanded the proceedings to the BIA and stayed Petitioner's removal pending a BIA decision. Pet. ¶ 14; ECF No. 5-4 at 1. On July 8, 2022, the BIA received notice of the Ninth Circuit's decision to remand proceedings. ECF No. 4-1 ¶ 14. On July 28, 2023, the BIA issued a briefing schedule, but Petitioner "never received this notice"

and "did not file a brief in support of the remand." Pet. ¶ 15. On October 31, 2025, the BIA denied the motion to remand because Petitioner did not make "any attempts to challenge or overcome the Immigration Judge's adverse credibility finding" and failed to "proffer[] any countervailing equities evidence demonstrating that he would merit a favorable exercise of discretion in light of his incredible testimony." ECF No. 4-2, Exh. 2 at 8–9; Pet. ¶ 15. But Petitioner "did not receive any notice of this remand either." Pet. ¶ 15. On August 25, 2026, Petitioner was re-arrested by ICE during his scheduled ICE check-in appointment. *Id.* ¶ 16. Two days later, Petitioner filed a motion to reopen and a motion to stay removal to the BIA. *Id.* On September 9, 2026, Petitioner filed a petition for review and a motion to stay removal before the Ninth Circuit. Trav. at 6. That same day, the Ninth Circuit accepted Petitioner's petition for review and issued a temporary stay of removal. *See* ECF No. 6-1, Exh. F at 2–5.

On September 2, 2026, Petitioner filed the instant Petition—during the pendency of the Ninth Circuit's acceptance of his petition and issuance of a temporary stay of removal—alleging that: (1) his re-detention without process violates his due process rights under the Fifth Amendment; (2) his detention is not subject to the mandatory detention framework pursuant to 8 U.S.C. § 1225(b)(2), but rather 8 U.S.C. § 1226(a)—in violation of the Administrative Procedure Act ("APA") and the Immigration and Nationality Act ("INA"); and (3) his warrantless arrest violated his rights under the Fourth Amendment and the procedures required by 8 U.S.C. § 1226(a). *See* ECF No. 1 ¶¶ 109-134. Petitioner seeks immediate release. *Id.* at 44.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl.2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal

law. *See* 28 U.S.C. § 2441(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III. DISCUSSION

Petitioner argues his re-detention without proper process violates due process.[1] Pet. ¶¶ 46–79. Respondents do not dispute this claim directly but rather contend that Petitioner's claims are premature because his "detention is statutorily mandated under 8 U.S.C. § 1231(a)." Return at 1. Petitioner counters that he is not subject to the mandatory detention framework of Section 1231(a) because he has a petition of review concerning his order of removal pending before the Ninth Circuit. Trav. at 6-7. The Court agrees with Petitioner.

### A. Statutory Framework of Immigration Detention

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a)." *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023) (quotation modified). "Where [a noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).

///

///

///

---

[1] The Court need not reach Petitioner's claims arising under the APA, INA, and Fourth Amendment because the Petition can be resolved on due process grounds. *See Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) (noting that a court need not address all the claims raised in a case if "none . . . would provide [the plaintiff] with any further relief than [already] granted.").

**1. Section 1225(b)**

Section 1225(b) provides that noncitizens under this statute shall be ordered "removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). Section 1225(b) also provides that noncitizens "shall be detained pending a final determination of credible fear of persecution and, if not found to have such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). "Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018).

**2. Section 1226(a)**

Section 1226(a) states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Avilez*, 69 F.4th at 529–30. Section 1226(a) also allows for release on bond or conditional parole. 8 U.S.C. § 1226(a)(2); *see also Avilez*, 69 F.4th at 530. "Because of [§ 1226(a)'s] permissive language—specifically, the word '*may'*—detention under [this statute] is discretionary." *Avilez*, 69 F.4th at 530 (citing *Prieto-Romero*, 534 F.3d at 1059.).

**3. Section 1231(a)**

Section 1231(a) "applies to detention after the entry of a final order of removal." *Id.* This statute provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). The beginning of the removal period is determined by the *last* occurrence of any of the following:

> (i) The date the order of removal becomes administratively final. (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order. (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B)(ii). Section 1231 also mandates the detention of a noncitizen. *See* 8 U.S.C. § 1231(a)(2).

At issue in this case is whether Petitioner is subject to the mandatory detention framework of Section 1231(a). As a threshold matter, the Court first considers whether Petitioner is subject to a final order of removal. Here, Petitioner has a petition for review pending before the Ninth Circuit which presents a challenge to the BIA's October 31, 2025, denial of his motion to remand—and to the underlying order of removal—after the Ninth Circuit granted the government's unopposed motion to remand Petitioner's proceedings to the BIA. *See* ECF No. 5 at 5; ECF No. 5-4 at 1-3. The Ninth Circuit also issued a temporary stay of removal against Petitioner "until further order of the court." ECF No. 6-1, Exh. F. at 2; ECF No. 6 at 1-2. While Petitioner's order of removal may be administratively final, it is not judicially final because its adjudication remains pending before the Ninth Circuit. *See Prieto-Romero*, 534 F.3d at 1060 ("[T]he plain language of § 1231(a) provides no authority to detain [noncitizens] such as [the petitioner] whose removal order is *administratively*—but not *judicially*—final.") (citations omitted); *see also Chaudry v. Bondi*, No. 2-25-cv-02339-DGE, 2025 WL 3706534, at *5 (W.D. Wash. Dec. 22, 2025) (finding that the petitioner was not detained under 8 U.S.C. § 1231 because he "appealed the BIA's 2020 administrative order of removal to the Ninth Circuit and that the appeal remain[ed] pending" and "the Ninth Circuit entered an order staying removal 'until issuance of the mandate or further order of the court'"). Because Petitioner's order of removal is not *judicially* final, Petitioner is not subject to the mandatory detention framework of Section 1231(a).

Next, the Court must determine whether Petitioner is subject to the mandatory detention framework under 8 U.S.C. § 1225(b) or the discretionary framework under 8 U.S.C. § 1226(a). Based on the Ninth Circuit's holding in *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026), Petitioner—who entered without inspection and was later detained within the interior of the United States—is subject to the discretionary detention framework of 8 U.S.C. § 1226(a), not § 1225(b).

In conclusion, the Court finds that Petitioner is not subject to a final order of removal that mandates his detention, but rather the discretionary detention framework governed by Section 1226. The Court thus declines to deny the Petition as premature, and reaches the merits of Petitioner's claims.

**B. Due Process**

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. A person at risk of suffering serious loss being given notice and an opportunity to be heard, in a meaningful manner and at a meaningful time, is the essence of procedural due process. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Courts have identified various ways that a petitioner may be granted some form of parole. The decision is "discretionary and is made on a case-by-case basis." *J.S.H.M. v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *6 (E.D. Cal. Oct. 16, 2025). Parole can be made for humanitarian reasons or for it providing a significant public benefit pursuant to 8 U.S.C. § 1182(d)(5)(A), *or* it can be conditional under 8 U.S.C. § 1226(a). *Id.* Courts have recognized that generally, the term "released on their own recognizance" refers to conditional parole. *Id.*; *see also Ortega-Cervantes v. Gonzalez*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'released on recognizance' as another name for 'conditional parole' under § 1226(a)").

While courts have recognized these as distinct procedures, they have consistently applied the same procedural due process analysis to petitioners subject to these forms of parole. Under 8 U.S.C. § 1182(d)(5)(A), courts have held that parole status entitles the petitioner to certain due process rights under both procedural due process and the APA.

*See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025) (finding violation under APA); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 154 (W.D.N.Y. 2025) (finding violation under procedural due process). Similarly, for conditional release under § 1226(a), the court in *Pinchi* explained similar procedural due process rights:

> [Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria. The regulations authorizing ICE to release a noncitizen from custody require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). [Petitioner] was apprehended by ICE officers when she crossed the border into the United States . . . ICE then released her on her own recognizance. As ICE was not authorized to release [Petitioner] if she was a danger to the community or a flight risk, the Court must infer from [the] release that ICE determined she was neither. [Petitioner's] release from ICE custody constituted an "implied promise" that her liberty would not be revoked unless she "failed to live up to the conditions of her release." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The regulatory framework makes clear that those conditions were that she remain neither a danger to the community nor a flight risk. . . . Accordingly, [Petitioner's] private interest in retaining her liberty is significant.

*Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034–35 (N.D. Cal. 2025). Several courts in this District have followed suit and found due process violations where the petitioners were specifically granted release on their own recognizance under 8 U.S.C. § 1226(a). *See, e.g.*, *Mateo v. LaRose*, No. 26-CV-4895 JLS (VET), 2026 WL 2621293 (S.D. Cal. Sep. 4, 2026) (finding due process violation where petitioner was released on his own recognizance and granting release under similar facts); *Tran v. LaRose*, No. 26-CV-2653 JLS (GC), 2026 WL 1303166, at *1–3 (S.D. Cal. May 12, 2026) (same); *Antonio v. LaRose*, No. 26cv2387-LL-MMP, 2026 WL 1215037, at *1–3 (S.D. Cal. May 4, 2026) (same); *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1163–67, 1169 (S.D. Cal. 2025) (same).

The Court agrees with all the foregoing courts and similarly holds that Respondents created a liberty interest in Petitioner when they granted his release. *See* Pet. ¶¶ 10, 47–48. As this Court explained in *Sanchez v. LaRose*, due process requires not only notice and opportunity to be heard regarding the revocation of such an interest, but also that such notice and opportunity be meaningful. No. 25-cv-2396-JES-MMP, 2025 WL 2770629 at *3 (S.D. Cal. Sept. 26, 2025). Petitioner alleges he was arrested and re-detained without notice or a pre-deprivation hearing, during which the Government would need to demonstrate materially changed circumstances justifying his re-detention. *See* Pet. ¶ 50. Absent changed circumstances or another factor justifying re-detention, any notice and opportunity to be heard that did occur could not have been meaningful. *See Rios v. Noem*, No. 25-CV-2866-JES-VET, 2025 WL 3141207, at *2 (S.D. Cal. Nov. 10, 2025) ("An alien's opportunity to be heard regarding a change in his status is only meaningful if the government comports with its own internal standards regarding parole revocation. DHS has the authority to revoke an alien's supervised release 'at any time' on a discretionary, but not unlimited, basis."). Accordingly, the Court finds that Respondents violated Petitioner's due process rights when they re-detained him during his ICE check-in appointment on August 25, 2026, without any notice or material change in his circumstances.

///

///

///

///

///

///

///

///

///

///

## IV. CONCLUSION

For the reasons explained, the Court **GRANTS** Petitioner's Writ of Habeas Corpus. Because the Court grants the Petition on due process grounds and concludes that Respondents' revocation of Petitioner's conditional parole violates procedural due process, Respondents are **ORDERED** to **immediately** release Petitioner from custody, subject to any conditions of his preexisting parole that existed at the time he was re-detained. The Parties are **ORDERED** to file a Joint Status Report by **October 20, 2026**, confirming that Petitioner has been released. The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED**.

Dated: October 13, 2026

Honorable James E. Simmons Jr.
United States District Judge